## BAPTIST v. SCHARFENSTEIN COAL CO.*
### No. 14322.

Court of Appeal of Louisiana. Orleans.
Jan. 30, 1933.

Jewell A. Sperling, of New Orleans, for appellant.

Porteous, Johnson & Humphrey and F. Carter Johnson, Jr., all of New Orleans, for appellee.

WESTERFIELD, J.

This is an appeal from a judgment refusing compensation to the dependent widow of an injured negro, Reilly Baptist, who died three months after his injury. Plaintiff's husband, while in defendant's employ, fell from the top of a woodpile and sustained a lineal fracture of the right os calsis, or heel bone. The accident occurred on December 10, 1931, and he died in the Charity Hospital on March 21st, 1932. The cause of death is conceded to have been cerebral hemorrhage, arteriosclerosis, chronic nephritis, and bronchial pneumonia.

Plaintiff contends that the fracture of the os calsis, together with a severe blow on the head, was the primary cause, or, at least, the activating cause, of the several diseases terminating in bronchial pneumonia, which caused the death of her husband. On the other hand, defendant denies that there was any causal relation between the trauma on the 10th of December and Baptist's death on the 18th of March; Baptist, it is claimed, having died from natural causes. Plaintiff's theory is that Baptist's injuries, particularly the blow on the head, induced the cerebral hemorrhage.

So far as the fracture of the os calsis is concerned, there is not the faintest showing that it could in any way have had any relation to Baptist's death. Regarding the blow on the head, there is some testimony in the record that Baptist's head was hurt as the result of his fall, but it is unconvincing, since the physician who treated him, Dr. Geismar, did not notice it, and, during the many visits he paid to Dr. Geismar's office, no complaint was ever made of an injury to his head. But conceding, arguendo, that Baptist did sustain a blow on the head sufficient to raise a "goose egg," as one of the witnesses for plaintiff described it, it could not have caused the cerebral hemorrhage, according to the expert testimony, because, when a hemorrhage of this character is due to unnatural causes, such as a trauma, the effect is immediate and usually fatal. The symptoms of cerebral hemorrhage, as given by the medical experts who have testified in this case, such as a partial paralysis and thickening of the tongue and difficulty in speaking, were not manifest until a few days before Baptist's death, a fact which is admitted by Hannah Kennon, a witness for plaintiff, who testified that she tried to talk to him and "he sounded like there was mush in his mouth." When asked when he talked in that manner, she answered "just a few days before his death." Dr. Geismar, who treated him continuously from the time of the accident until he was sent to the Charity Hospital on the 11th of March, testified that these symptoms did not appear until the day he was sent to the hospital.

In our opinion, the plaintiff has failed to connect the death of Baptist with the accident.

Consequently, and for the reasons herein assigned, the judgment appealed from will be affirmed.

Affirmed.

*Rehearing denied February 13, 1933.